## Case No. 11,283.

### POPPENHUSEN v. NEW YORK GUTTA PERCHA COMB CO.

[2 Fish. Pat. Cas. 62.][1]

Circuit Court, S. D. New York. May, 1858.

PATENTS — CONSTRUCTION — TIN FOIL PATENT — GREASE PATENT — EVIDENCE OF INVENTION — UTILITY — VALIDITY — INFRINGEMENT EXPERIMENT — ACT OF SERVANT OF CORPORATION — DAMAGES.

1. The "tin foil patent," granted to L. Otto P. Meyer, April 4, 1854, purports to grant the exclusive right to the use and application of tin foil, or its equivalents, to the hard compound of India rubber and gutta percha, during the process of vulcanization, in the manner described, to preserve and retain, during the process of heating and hardening, the forms and shapes given to the material, before the heating process commences, without any other pressure or molds.

2. The "grease patent," granted to L. Otto P. Meyer, December 20, 1853, purports to grant the use of oil or other equivalent substance applied to the surface of the prepared gum and between the gum and the plates of metal, or the molds substantially as described in the specification.

3. The patent, when produced in evidence, is prima facie evidence that the patentee was the inventor; that the thing patented was new and useful; and that in the specification there is contained a description in such full, clear, and exact terms as will enable any one skilled in the art to which it appertains to put it in practice from such description.

4. It is not whether a man conceived the idea that the thing patented could be done; to deprive the patentee of the right which the patent grants, he must have put his idea into practice.

5. The patent is prima facie evidence that it is different from any patent previously issued to any other person, and different from any description in the specification of such patent.

6. If the invention was useful when the patent issued, the patent is valid. If it has become useless since, by the discovery of some other method which dispenses with it, that would give no right to the defendants to use it.

7. Where experiments are performed as a matter of business, when the product of the experiment is thrown into the market to compete with the product of the patentee, although it may be called an experiment, it is, nevertheless, an infringement of the patent.

8. When one in the employ of a corporation, in the business of his employment, does an act for their benefit, which they adopt, approve, and take advantage of, they will be deemed to have authorized the act, and will be as much bound by it as if expressly authorized.

9. The act of violation is proof that the plaintiff is entitled to some damages; and when the amount of damages is not proved, the rule is that the jury give nominal damages, and, if the plaintiff intends to claim more than nominal damages, he, being entitled to recover his actual

1 [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

damages, must satisfy the jury what his actual damages are.

This was an action on the case tried by Judge Ingersoll and a jury, for the alleged infringement of two letters patent granted to L. Otto P. Meyer, one dated December 20, 1853 [No. 10,339], for "an improvement in processes of vulcanizing caoutchouc compounds," and the other dated April 4, 1854 [No. 10,741], for "an improvement in treating caoutchouc, and other vulcanizable gums," both of which had been assigned to plaintiff, [Conrad Poppenhusen.] The invention described in the first patent consisted in producing, by means of oil or other fatty substance, smooth and glossy surfaces upon the material commonly known as the hard compound of vulcanized caoutchouc, or gutta percha, or other similar gums, which might be manufactured according to the processes described in letters patent, granted to Charles Goodyear, June 15, 1844 [No. 3,633], and Nelson Goodyear, May 6, 1851, [No. 8,075]. The claim was as follows: "The producing of smooth and glossy surfaces upon the hard compounds of caoutchouc and other vulcanizable gums, by means of the use of oil, or other equivalent substance, applied to the surface of the prepared gum, and between the gum and the plates of metal, or the molds." The invention described in the second patent consisted in covering the surface of what is known as the hard compound of caoutchouc with tin foil or other equivalent substances to preserve the form previously given by embossing or molding. The contact of the tin foil during the curing process having the effect to preserve the form and the surface without pressure or molds.

C. M. Keller and F. B. Cutting, for plaintiff. George Gifford and E. W. Stoughton, for defendants.

INGERSOLL, District Judge. The suit, gentlemen, is upon two patents; one issued in December, 1853, which, I believe, is denominated here as the "Grease Patent;" and the other issued in April, 1854, which has been denominated the "Tin Foil Patent." They were issued to one Meyer, as the inventor; and subsequently Mr. Meyer transferred all right and title which he had to both of them to the plaintiff. So that, from the time of the transfer up to the present period, the plaintiff has had, and now has, all the rights which Meyer, at the time of the issue of the patents, had to them.

It is important, in a case of this kind, where you are to determine the rights between parties, that you should ascertain, in the first place, what is in controversy; and, to enable you justly to determine this case, there are three principal questions which are to be considered by you, and which should be kept distinct in your minds. And it is necessary that you should consider them distinctly when you retire to your room to compare opinions in regard to the verdict that you shall render.

These three questions, gentlemen, are: First, what do these patents purport to grant? And having ascertained what these patents purport to grant, the next question is: Are the rights which the patents purport to grant, valid grants of right? And if they are, then, in the third place, have these defendants infringed upon any of the valid grants of rights which the patents have conferred? And if they have, then it will follow as a necessary consequence, that the plaintiff is entitled to recover some damages.

I will, in the first place, turn your attention, gentlemen, to the patent known as the "Tin Foil Patent." It is the duty of the court to determine, what the patent purports to grant. The patent of April 4, 1854, purports to be for a new and useful improvement in the manufacture of caoutchouc and other vulcanizable gums. As gutta percha is a vulcanizable gum, the patent comprehends that as well as India rubber. The patent does not purport to grant the exclusive right to vulcanize the hard compound, in contact with metallic surfaces; or to vulcanize this compound when the series of sheets are piled upon one another with interposed sheets of flexible material, when the pile is confined between iron plates; or generally to give form or shape to such compound by pressure; or to preserve, during the process of vulcanization, the form previously imparted by pressure to the hard compound.

The nature and object of this patent was to give desired forms and shapes to the material commonly known as the hard compound of vulcanizable caoutchouc, or gutta percha (which material may be manufactured according to the process described in the letters patent granted to Charles Goodyear, of the date of June 15, 1844; and to Nelson Goodyear, of the date of May 6, 1851), by heating, hardening, and curing the material while it is covered by, and in contact with, the tin foil, or similar sheets of other metals. The nature and object of the invention was to give desired form and shape to such vulcanized hard compound, while it was so covered and in such contact. The patentee, in his specification to his patent, specifies and sets forth the essential means by which this object is accomplished.

He takes a sheet, mass, or piece of the prepared compound, in its green, unvulcanized, and plastic state; he covers it with tin foil, which he prefers to any other metal; he then stamps or presses the plastic material into the shape or form desired, stamping or pressing at the same time the sheet of tin foil so that it shall completely cover and be in contact with the gum, which can be easily done on account of the thinness and flexibility of the metal. This is all that is done preparatory to the heating process.

The material thus formed, thus shaped, thus covered with the tin foil—with nothing but

the tin foil—to preserve the form and shape, he then subjects to the heating process without further care or preparation. Upon the completion of the heating process, when the hard compound is completely vulcanized, the form and shape given to the stamped or pressed material before it was subjected to the heating process, is preserved entire, by reason of the covering of the tin foil, and by no other means; and the surface of the material, which has been in contact with the flexible metal, is smooth as the surface of the metal. The contact of the tin foil with the material to be cured has the effect, during the curing process, to preserve the form and shape of the material, in the form and shape which it was in before being submitted to the heating process, without any other pressure, and without molds. By means of the tin foil, or other equivalent, so used and applied, and by no other means, this desired and, as the plaintiff claims, useful effect or result is produced.

And the patent purports to grant to the patentee the exclusive right to the use and application of tin foil, or its equivalents, to the hard compound of India rubber and gutta percha during the process of vulcanization, in the manner described, to preserve and retain, during the process of heating and hardening, the forms and shapes given to the material, before the heating process commences, without any other pressure or molds.

This, gentlemen, is the whole that the patent purports to grant. It purports to grant nothing else; it purports to grant the whole of this. And that you may understand it more perfectly, I will repeat what I have already said: The patent purports to grant to the patentee the exclusive right to the use and application of tin foil or its equivalents, to the hard compound of India rubber and gutta percha during the process of vulcanization, in the manner described, to preserve and retain, during the process of heating and hardening, the forms and shapes given to the material, before the heating process commences, without any other pressure or molds. This is what is patented; and this construction of the patent must govern you in considering the case. This is the grant of right, which the patent purports to make. And this grant of right, which the patent purports to make, is a valid grant of right, giving to the patentee as good title to it as you have to any property which you may own, and entitled to equal protection, provided, at the time of the application, the patentee was: In the first place, the inventor of the thing patented. In the second place, that the thing patented was new. In the third place, that it was useful. And provided, further, in the fourth place, that the invention or thing patented in the specification, is described in such full, clear, and exact terms as will enable any one skilled in the art to which it appertains, to put it in practice from the description in the specification contained.

And the law is, that the patent, when produced in evidence, is prima facie evidence that the patentee was the inventor; that the thing patented was new and useful; and that in the specification, there is contained a description in such full, clear, and exact terms as will enable any one skilled in the art to which it appertains, to put it in practice from the description contained in the specification. Which prima facie evidence must control you in your determination, unless such prima facie evidence is rebutted by countervailing evidence introduced during the progress of the trial.

The question, then, gentlemen, to be submitted to you is: Has this prima facie evidence been rebutted by sufficient countervailing evidence introduced in the case? If it has not been, then it will follow that the grant of right in the patent contained, is a valid grant of right.

Was, then, the thing patented, new? The counsel on the part of the defense have relied upon evidence which they have introduced to you to prove that it was not new; that it was patented by a French patent, and described in the specification to that patent, which has been read from a French publication; that it was patented to either one or both of the Hancocks, and described in the specification to the patent of Goodyear; and that it is the same as the mode adopted in the manufacture of gaskets.

If, before the invention of the patentee (provided the thing patented was his invention), tin foil or any other flexible, pliable material or substance, performing substantially the same office, which office is to preserve and retain the forms and shapes, in substantially the same way, was, either by the French patent or by either of the Hancock patents, or by any mode described in either of the specifications, or by the mode of making gaskets, used and applied as a covering to the hard compound of India rubber or gutta percha, substantially in the manner described in the patent of Meyer, to preserve and retain, during the process of heating and hardening, without any other pressure, the forms and shapes given to the material to be vulcanized, before the heating process commenced, then the invention of the patentee was not new, and the grant of right which the patent purported to make was inoperative, and conveyed no valid right to the patentee.

But although, gentlemen, tin foil or other material may have been used in some way, in some one of these patents, if it was not, or if any other flexible or pliable material, substantially performing the same office in substantially the same way, was not used to preserve and retain, during the process of heating and hardening, without any other pressure, the forms and shapes given to the material to be vulcanized, before the heating process commenced, then there is nothing in any of these claimed inventions, or patents,

that would make the patent to Meyer inoperative, or would deprive him of the right which the patent purports to grant.

Or if, gentlemen, before the invention of Meyer, either Goodyear, or any one else at Roxbury, did invent the same thing, and put the same in practice—I lay emphasis on that —put the same in practice—in such an event the right granted to Meyer was void. It is not whether a man conceived the idea that it could be done. To deprive the patentee of the right which the patent grants, he must have put his idea in practice. And it is claimed on the part of the plaintiff, that no one has been proved to you to have had any idea of this kind, of giving this form and shape to the material to be vulcanized, without any other pressure than that applied by the tin foil, or other equivalent substance; and not only that, but, if there was any such idea, it was never put in practice by any one else.

And in relation to this patent to Goodyear, of April 4, 1854, which was issued at the same time as the patent to Meyer, the patent issued to Meyer is prima facie evidence that it was different from that issued to Goodyear, and different from any description which Goodyear gave in his specification.

The next question, gentlemen, is: Was it useful? And I do not think this will occupy much of your time. It dispenses, among other things, with the molds or plates; and it is claimed that it preserves the forms better than in the old molds. And, gentlemen, there is one species of evidence that must have struck you, and that, when it is introduced, always goes, to my mind, to convince me very strongly, that it is useful, and that is, the use by the defendants; for the answer is: If it is not useful, why did they use it? Men are not apt, gentlemen, to use useless things when they are endeavoring to make a profit. But I submit the question to you, whether it is useful.

Mr. Stoughton: We have not suggested that the use of tin foil is not useful; it is the grease we say that is not useful.

Court: Then, gentlemen, it is not claimed that this invention, such as I have described to you, is not useful.

The next question is: Was the patentee the inventor? He must have been the inventor to give him the right which the patent purports to grant. The patent is prima facie evidence that he was the inventor. But it is said, in addition to what I have already stated, that if the invention was not fully described in some of the publications or patents I have referred to, to wit, the French patent, and the patent to the Hancocks, there was so much described, so nearly allied to this, that it required no invention to produce this, and that there was nothing to contrive; and it is said that after what was done by the Hancocks, it required no genius, no effort, to come to the conclusion

that this could be done which the patent purports to grant to Meyer.

As I have already said, the patent is prima facie evidence that the patentee was the inventor; and the defendants, to remove that prima facie evidence, must satisfy you that it required no invention. An expert has been introduced to you to say that, in his opinion, it did not. Another one says that in his judgment, it did. But after all, you, gentlemen, are the best judges to determine whether it required invention—whether it required any contrivance; and if, in your opinion, it required invention, and he is the inventor, then the patent can not be successfully attacked on that ground.

The next question is: Was it sufficiently described so that any one skilled in the art could understand it? The patent, as I said before, is prima facie evidence that it was. Mr. Edward S. Renwick says that, from looking at the patent, he does not think he could determine what was to be done. The rule is, gentlemen, that one skilled in the art shall be able to determine; but it appears that Mr. Renwick was not skilled in the art. It seems to me that the great difficulty in Mr. Renwick's mind, in determining this was, that he did not understand what was granted. Because, when you understand what was granted, you can understand very well whether the description in this specification is sufficient to enable any one skilled in the art to bring about that which is granted. As I have already told you, that which was granted was the use of tin foil and its equivalents to preserve the form and shape of the compound without any other pressure. The doubt on Mr. Renwick's mind was, whether it was to be used with plates or molds. But the rule of law is, that this patent grants that which I have stated to you. And then, gentlemen, the question is: Would there be any doubt in the mind of any man that when the law is that the patent grants to the patentee the use and application of tin foil and its equivalents to the hard compound of India rubber or gutta percha, during the process of vulcanization, in the manner described, to preserve and retain during the process of heating and hardening the forms and shapes given to the material, before the heating process commences, without any other pressure or molds? Whether any one would not understand when the patentee (that being the patent) tells them that he covers it with tin foil, then "stamps or presses the plastic material into the shape or form desired, stamping or pressing at the same time the sheet of tin foil so that it shall completely cover and be in contact with the gum, which is easily done because of the thinness and flexibility of the metal," and that he then subjects to the heating process that which is thus prepared? Whether, when it is thus specified, and you understand what was granted, not only men skilled in the art, but men of ordinary intelligence, would not understand what was to be done? And if

they understand what was to be done, then the patent can not be attacked on this ground.

The next question is: Have the defendants infringed? They use plates covered with tin foil, to preserve the shapes and forms, not only of the plain material, but of that which has sometimes been denominated as the quill-back, molded in that way. And you can readily determine from the evidence, taking what I have told you was the grant of right, whether there has been an infringement or not. So much, gentlemen, for the tin foil patent.

I will now say a few words on what is called the "Grease Patent." What does that patent purport to grant? It is simple, gentlemen; you will have it before you; and it purports to grant to Meyer the use of oil, or other equivalent substance, applied to the surface of the prepared gum, and between the gum and the plates of metal, or the molds, substantially as described in the specification to that patent. That is what it purports to grant.

Was it new? Why, it is said, gentlemen, that it has been described in one of the Hancock patents. If it has been described there, or in the French patent, substantially as he describes it in his specification, then the patent is not valid. But if it has not been described substantially so that any one could understand it, as he has described it, then it is not to be attacked on this ground.

Was it useful? It is not claimed that it was not useful, so far as India rubber is concerned. But it is said, that so far as respects gutta percha, it was useless. And, as the defendants have used nothing but gutta percha, if it was useless, as to gutta percha, although it might be useful as to India rubber, the plaintiff would not have suffered any injury from the use, because, if useless, it is not good as to gutta percha.

The question, then, is submitted to you, gentlemen, whether it is useless as to gutta percha—whether it was, at the time the patent was granted, useless? And the degree of use is not a matter of consideration. If it was useful at the time, the patent was a valid one. If it has become useless since, by the discovery of some other method which dispenses with it, why, that would give no right to the defendants to use it. But if it is useless, as applied to gutta percha, then the defendants can not be made liable for using it the short time they did use it. If this was new and useful, as to gutta percha, and the patentee was the inventor, and it has been sufficiently described in this specification: in such an event, the grant of right contained in it was a valid grant of right.

The next question, gentlemen, is: Has there been a violation or infringement? It is said, gentlemen, that there has not been, for the reason that whatever use was made of it was an experimental use—a use merely for experiment, and not with a view to profit; and when there has been no profit and no sale, it will not make a party liable, because the pat-entee would not be injured by it. But where, gentlemen, it is done as a matter of business, where the product of that experiment has been thrown into the market, to compete with the products of the plaintiff, although he may call it an experiment, yet, if it is a matter of business, and thrown into the market for the purpose of being sold, and is sold with his other products, why, that will be such a use as will make the party liable. But it is said that it was used by some one in the establishment without the authority of the defendants. The defendants are a corporation, as I understand it. I judge them to be a corporation from the name given them. A corporation can act only by their agents. It can act only by those who are in their employ. And when one in the employ of a corporation, in the business of his employment, does an act for their benefit, and which they adopt, and approve, and take advantage of, they will be deemed to have authorized the act, and will be as much bound by it as though expressly authorized. You are here to determine, gentlemen, whether these articles, manufactured by their agent, he being in the employment of the corporation, whether he did it in the business or employment of the corporation, whether it was for their benefit; and if they adopted and approved of it, by selling it in the market, and thereby took advantage of it, they will be deemed to have authorized the act, and will be bound by it.

This is all I deem it necessary to say to you in reference to this case, except a word in reference to damages. When a patent has been violated, it necessarily follows, that the plaintiff is entitled to some damages. The act of violation is proof that he is entitled to some damages: and when the amount of damages is not proved, the rule is, that the jury give nominal damages; and if the plaintiff intends to claim more than nominal damages, he, being entitled to recover his actual damages, must satisfy the jury what his actual damages are.

Evidence has been introduced to you, gentlemen, by which the plaintiff claims that he has been damnified to a certain amount. You will look at this if you come to the question of damages, and determine what the actual damages are. Actual damage is the amount to be rendered in favor of the plaintiff. I do not go much into this subject, gentlemen, for, from what I see of the case, I do not think that it is of as much consequence as to determine the question of right. To be sure, the plaintiff wishes the damages which he has sustained; but the great point is, has he a right to these patents? That is the important question for you to determine. The question of damages is of secondary importance, as I view it.

You will now take the case, gentlemen, and dispose of it as you think the evidence warrants.

The jury found a verdict for the plaintiff, assessing damages on the letters patent, bearing

date December 20, 1853. at six cents: and upon the letters patent, bearing date April 4, 1854, at $100.

[For reports of bills in equity, founded upon these patents, see Cases Nos. 11,281, 11,282, 11,279, and 11,280.]

[NOTE. Very soon after the trial of this case the plaintiff filed his bill in equity against the defendants. charging violations of the plaintiff's patent rights, occurring since this trial. The case was first heard upon motion for a preliminary injunction. which was granted. Case No. 11,281. In a few months thereafter the plaintiff moved for an attachment for violation of this injunction. The attachment was refused. Id. 11,282. The plaintiff also filed a bill against Oscar Falke, Edward Simon, and others. employés of the New York Gutta Percha & India Rubber Vulcanite Company, alleging infringement of his patent of December 20, 1853. known as the "Grease Patent," and of his patent of April 4, 1854, known as the "Tin Foil Patent," reissued August 16, 1859. The case was first heard upon motion for provisional injunction, allowed upon the "grease patent." but denied as to the reissued "tin foil patent." Id. 11,279. Upon final hearing perpetual injunctions were granted upon both patents. Id. 11,280.]