SAYLES (PHETTIPLACE v.). See Case No. 11,083.

## Case No. 12,424.

### SAYLES v. RICHMOND, F. & P. R. CO.

[4 Ban. & A. 239; 3 Hughes, 172; 25 Int. Rev. Rec. 209; 16 O. G. 43; 7 Reporter, 743; 11 Chi. Leg. News, 281; 4 Cin. Law Bul. 313.] [1]

Circuit Court, E. D. Virginia. April, 1879.

PATENTS — LIMITATION OF ACTIONS — EQUITABLE JURISDICTION—DISCOVERY—ACCOUNT.

1. A patent was granted in 1852, for the term of fourteen years, and was extended in 1866 for seven years: *Held*, that the seven and fourteen years were, by section 4927, Rev. St., consolidated into one term, so as to make a statute of limitation apply to the period of twenty-one years as a single integral term.

[Cited in Hayden v. Oriental Mills, 22 Fed. 104.]

2. The subject of the limitation of suits for the infringement of patents, reviewed.

3. The application of state statutes of limitation to actions at law, for infringement of patents, considered.

[Cited in Sayles v. Oregon Cent. Ry. Co., Case No. 12,423; Hayden v. Oriental Mills, 15 Fed. 607.]

4. The nature and scope of the equitable jurisdiction, in patent causes, conferred upon the circuit courts by statute, stated.

5. Where, after a patent has expired, a suit is brought for its infringement, and the complainant and defendant are citizens of different states, the court will not entertain jurisdiction, under its general equity jurisdiction, where the bill is not for an account or a discovery.

[Cited in Atwood v. Portland Co., 10 Fed. 284.]

6. A bill brought to recover profits made by the defendant from the infringement of the complainant's letters patent, if it be not a bill for discovery, cannot be entertained as a bill for an account, in order to confer equitable jurisdiction.

7. Where the patent sued upon is the property of the complainant in his own right, and does not possess the character of fiduciary property, an infringer of the patent is not a trustee de son tort, and the court cannot upon that ground entertain equitable jurisdiction of the bill.

8. The cases in the circuit courts bearing upon the question of the trusteeship of an infringer, examined and cited.

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and by Hon. Robert W. Hughes, District Judge, and here compiled and reprinted by permission. The syllabus and opinion are from 4 Ban. & A. 239. The statement is from 3 Hughes, 172.]

This bill is brought to recover profits against the defendant [the Richmond, Fredericksburg & Potomac Railroad Company] from its unauthorized use of the complainant's improved railroad car-brake (known as Tanner's brake) for a number of years before the patent expired. The brake was invented by two men, Thompson and Bachelder, and by them the invention was assigned to Tanner in April, 1852. The brake was patented by Tanner in July, 1852 [No. 9,109]. Tanner assigned it to the complainant here, [Thomas] Sayles, in 1854. The patent was renewed for seven years from July, 1866. It finally expired on the 6th of July, 1873. Sayles filed this bill of complaint on the 8th January, 1879. The bill charges the unlawful use of the brake by the defendant from July 6th, 1856, to July, 1873. It prays for a discovery of the full amount of profits accrued to the company from such use of the brake; also for an account of profits; and finally that the defendant may be made to pay this amount of profits when ascertained. The bill is not in form a bill for discovery or for account. It, of course, is not a bill for an injunction, having been filed after the patent right of Sayles had finally expired. The defendant demurs to the bill, setting out as one ground of demurrer, that the complainant is barred from recovery by the statute of limitations; and, as another ground, that the bill does not make a case for relief within the jurisdiction of a court of equity.

A. H. Warner, for complainant.

A. McCallum and George Payson, for defendant.

HUGHES, District Judge. It is only necessary for me to pass on the two questions of limitation and of jurisdiction.

First, as to the statute of limitations. The 34th section of the judiciary act of 1789 [1 Stat. 80]—section 721, Rev. St. U. S.—is the only general statute of limitations known to federal legislation. In providing that the laws of the several states shall be the rules of decisions in trials at common law in courts of the United States, except where treaties, or acts of congress otherwise provide, congress virtually adopted the statute of limitation of each state as the limitation of actions brought in the United States courts held in that state. This point is so thoroughly settled that it is useless for me to cite authorities on the subject. But this section excepts, in terms, cases in which any acts of congress may provide other rules of decision; and congress did enact a special statute of limitations as to patents, in section 55 of the act of July 8, 1870, entitled an act "to revise, amend, and consolidate the statutes relating to patents and copyrights" (16 Stat. 206), the concluding clause of which declared that all actions should be brought within the term of the patent, or within six years after the expiration thereof. This clause was not repealed until

the 22d of June, 1874, when it was virtually repealed by section 5596 of the Revised Statutes of the United States, in having been omitted in the revisal from sections 4919 and 4921, which latter sections, in other respects, embodied sections 59 and 55 of the act of 1870. This repeal gave to the complainant the right to sue, under section 721, within five years from June 22, 1874 (Sohn v. Waterson, 17 Wall. [84 U. S.] 596; Ross v. Duval, 13 Pet. [38 U. S.] 62; and Lewis v. Lewis, 7 How. [48 U. S.] 778); and the present suit was, in fact, brought within that period. The suit is, therefore, undoubtedly, in time as to profits made by the defendant during the period of the extension of the patent—July, 1866, to July, 1873. The only question admitting of doubt is, whether or not it is brought in time to cover profits for the fourteen years extending from 1852 to 1866. Section 66 of the act of 1870, and section 4927 of the Revised Statutes, provides, in its last clause, that when a patent shall be extended for seven years after the expiration of the first period for which it was granted, it "shall have the same effect in law as though it had been originally granted for twenty-one years."

I have given all the attention of which I am capable to the ingenious argument of defendant's counsel in their contention that, in spite of this language, the limitation applied severally, first, to the fourteen years—barring all claims accruing specifically in that period; and, second, to the seven years—barring claims accruing afterward in that period; so that, if a suit is brought, as this was, within six years after the close of the latter period, it would be good to cover claims accruing therein, but would not be good to cover claims which had accrued anterior thereto. But it is too plain for doubt, in my mind, that the law, which is certainly written as has been quoted, really means what it declares, when it provides that the renewed patent "shall have the same effect in law as though it had been originally granted for twenty-one years." The necessary effect of this language is to consolidate the seven and fourteen years of the two patents into one term, as under one patent. and to make the limitation apply to the period of twenty-one years as a single integral term. Indeed, I can well imagine it to have been one of the objects of section 66 of the act of 1870, to establish a plain, intelligible period of limitation, to wit, six years after one single integral period of twenty-one years, rather than to enact a complicated statute of limitations, depending upon two periods of duration, two sets of dates, and two classes of claims. I cannot, therefore, sustain the demurrer. So far as it rests upon this ground I must hold that the claim of the complainant in this suit is not barred.

I come, therefore, to the more important question, whether the complainant's bill makes a case within the jurisdiction of a court of equity. This suit being one in which complainant and defendant are citizens of different states, and the jurisdiction of the court extending here to any case which may fall within its general jurisdiction as a court of equity, its power here is not a mere statutory jurisdiction confined to cases arising under patent laws, but it is the general power of an equity court. I doubt whether, under section 55 of the act of 1870, or section 4921 of the Revised Statutes, the United States circuit courts have jurisdiction in patent cases, except by injunction, where the parties are citizens of the same state. In cases where the jurisdiction is merely statutory, and would not exist but for the acts of congress giving special jurisdiction in patent cases, I doubt whether these courts could entertain suits in equity, except by injunction. It is a well settled canon of construction that jurisdictional legislation must be strictly construed, and I see nothing in the letter of section 4921, relating to patent suits in equity, to authorize any other proceeding in them by the circuit courts, as courts of equity, but by injunction, carrying with it, of course, proceedings incident to injunction. If so, the term of this complainant's patent having expired, and there being no case for an injunction, we have no jurisdiction in this suit merely as a patent suit under section 4921. This proposition, however, does not affect the present case. We are proceeding under the general powers of an equity court, and have jurisdiction of the case (if it can otherwise be entertained) by virtue of the parties, complainant and defendant, being citizens of different states. It was not contended, in the argument at bar, that the bill in this case can be entertained as a bill for discovery. In fact it is not framed on that theory, and does not contain the averments necessary to constitute it such a bill. It does not aver, that the information it seeks, rests alone in the knowledge of the defendant. The defendant is a corporation having no conscience to probe, and is incapable of taking an oath. It can give information only through its officers, and these may all be summoned, and may testify as ordinary witnesses. A "discovery" (in the technical sense) by the defendant is not necessary to the plaintiff's relief. There is, therefore, no case for a discovery made in this bill, as a bill of discovery. Nor is the bill framed on the theory and in the form of an ordinary bill of account. What it seeks is to recover profits resulting to the defendant from using, through a series of years, a mechanical invention without the owner's consent or authority. These profits do not consist in specific sums of money received by the defendant in so using the invention; they simply consist in the advantage and convenience which the defendant derived from using an ingenious piece of mechanism. What this advantage was, is a matter of estimate by experts or men of practical experience, as due in the lump. It is not a matter of items, of

money and accounts, of book-keeping, of buying and selling, of mutual dealing in goods or money. Nor is there any mutuality of account. If defendant's profits consisted of items at all, the items were all on one side. Because this is not a matter of account, because there was no mutuality of accounts, and because the case is not one for discovery, it follows that the bill cannot be entertained as a bill for an account as such. Indeed, in the argument at bar, the complainant's counsel did not claim jurisdiction on that ground. In truth, the argument at bar was devoted almost wholly to the question whether or not the profits derived by the defendant, as claimed by the bill, could be treated as trust funds; whether, as to them, the defendant was not a trustee de son tort, and whether the jurisdiction of equity to look after these profits as a trust fund, and to compel a discovery, an account, and a restitution of them, as a trust fund, could be sustained.

This question has never been adjudicated by the supreme court of the United States. Complainant's counsel cites decisions from other courts, from which he thinks it is inferable that courts of equity may take jurisdiction of suits to recover from infringers profits derived from patented inventions, on the ground of constructive trusteeship, and he refers to several recent conflicting decisions of the United States circuit courts on this question. But I think I may safely proceed as if the question were still an open one. I do not think that the reported cases cited by the complainant's counsel throw any clear light on the question, for they do not bear upon it. I do not perceive that the case of Crosley v. Derby Gaslight Co., 3 Mylne & C. 430, shows anything which should affect the case at bar. It is the report of the second hearing of the case, and is but a partial report. The only question was upon the construction of a former decree. It does not appear that the bill was not for an injunction, among other things. In a foot-note, the report of the case on an appeal from the first decree is mis-cited as in 4 Mylne & K. 72. I believe there is no such volume, and I have been unable to correct the reference, or find the case. The case of Livingston v. Woodworth, 15 How. [56 U. S.] 546, related to a planing-machine, and was an injunction suit, in which nothing was decided, except that the actual profits of an infringer of a patent could be recovered against the infringer as an involuntary trustee; but nothing was said on the subject, in the decision of the court. There was no question of jurisdiction in the case. In Cowing v. Rumsey [Case No. 3,-296], which related to a cylinder-polisher, and was an action on the case, no question of jurisdiction arose. The judge there merely made an incidental remark, passim, to the effect that an infringer of a patent might be treated as a trustee in respect to profits derived by him from the use of the patent. In Burdell v. Denig, 92 U. S. 716, which related

to a sewing-machine, and was an action at law to recover damages from an infringer of a patent, and where jurisdiction was not in contest, Mr. Justice Miller incidentally said that damages might be recovered at law, but that profits were the measure of recovery in equity, on the theory that the infringer might be treated as a trustee. In Birdsall v. Coolidge, 93 U. S. 68, which related to a machine for amalgamating gold and silver, and was an action at law, Mr. Justice Clifford made a remark that profits might be recovered in equity by considering the infringer of the patent as trustee for the patentee.

The question of jurisdiction did not arise in any one of these cases. Much less did the court, in a single instance, intimate, in the remotest manner, that, notwithstanding the existence of an adequate common law remedy, equity could take jurisdiction of a bill for profits arising from the use of a patent, solely on the ground of constructive trusteeship. I have looked through the reports in vain for any direct authority for such a jurisdiction. There is such a thing known in equity jurisprudence as a trustee de son tort; but in every mention of such a trustee in the books, the property in respect to which a person has been regarded as a trustee de son tort has possessed, before the interference with it, the character of fiduciary property. I think it clear law that it is only in respect to property already subject to a trust, and stamped with the fiduciary character, that a person can become a trustee de son tort.

In the present case, if the assignment of the patent from Tanner to Sayles had been in trust, for the benefit of beneficiaries recognized in law as such, and Sayles were here suing for the trust funds for the benefit of such beneficiaries, the defendant might, I suppose, upon the teaching of the authorities on the subject, be treated as a trustee de son tort, and be sued in equity. But I think that it may safely be held that, in any case of constructive trusteeship, the character of trustee de son tort does not attach in such manner as to give equitable jurisdiction over him, unless the property with which he interfered was already trust property when the interference occurred. The defendant here, therefore, is not a trustee de son tort, nor suable, as such, in equity. This much being clear, let us now suppose the case of a person who takes possession of and uses another's horse, wagon and team, or thrashing machine, without his knowledge, consent, or authority. In such a case, the law provides common law remedies, in which the defendant is afforded the constitutional right of a trial by jury. In such a case, the owner may recover damages in trespass for the tort; or, he may waive the tort, and sue in assumpsit on the implied promise to pay what is equitably due for the use and possession of the property. Will it be contend-

ed that a bill in equity would lie in such a case on the theory that the wrong-doer was a trustee de son tort, or trustee at all? Yet the theory of an implied promise to pay what is equitably due, is, except in name and form, identical with the theory of trusteeship, which is that the wrong-doer is custodian of the money so promised. The action of assumpsit in such a case is based upon the theory that the wrong-doer has impliedly promised to pay what ex æquo et bono is a fair equivalent for the use of the property. He is in law treated as a fiduciary, in custody of another's property. But, though this theory of trusteeship (for it is nothing else) is as old as the doctrine of assumpsit, no one has ever contended, until lately, that such a mere theory, employed by judges as a means of explaining, by analogy, the premise which they derive from the relation of the defendant to the property he has used, may be employed as the basis of a new departure in equity practice, and of an indefinite extension of the equity jurisdiction, in derogation of the common law, and constitutional right of trial by jury.

The case I have supposed is, in principle, precisely the case we have at bar; for there is no magical quality in the property of the patentee in his patent to distinguish this case from the one just supposed, where ordinary property had been taken and used without the owner's consent. We are not dealing with the patent case by virtue of the peculiar jurisdiction of this court in patent cases, but under its general jurisdiction as a court of equity. The defendant has used the complainant's property; and the fact that the property used is a patent, does not at all affect the question of jurisdiction. The patent was not trust property when the defendant began to use it, and, therefore, the defendant does not bear to it the relation of trustee de son tort.

The act of the defendant was nothing but the simple one of a person taking and using another's property, without authority, to his own advantage, and incurring a liability to compensate the owner for such use of the property. The case is, in principle, precisely identical with that of such a use of a horse, or a boat, or a wagon and team, or thrashing-machine—giving a right of action in assumpsit; and, until recently, I have never known it to be contended that compensation for such use could be sued for in equity, "on the theory of a constructive trusteeship," or on the "idea" that the wrong-doer was an "involuntary trustee." Courts have undoubtedly used such language in illustration of the theory of responsibility, on which they have held defendants liable in actions of assumpsit at law, and in bills of injunction in equity for the use of patent property; but language used on the bench for mere purposes of illustration cannot either fairly or safely be treated as authoritative decisions, and made the basis for as-

suming a jurisdiction not otherwise existing, and new to equity jurisprudence.

The bill will, therefore, be dismissed.

[For other cases involving this patent, see note to Sayles v. Chicago & N. Ry. Co., Case No. 12,414.]