MAY *v.* BOARD OF COM'RS OF LOGAN CO., OHIO.

SAME *v.* BOARD OF COM'RS OF SENECA CO., OHIO.

*(Circuit Court, N. D. Ohio, W. D.* March 22, 1887.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—ADMINISTRATION.
   Rights of action for infringements of patents survive to the personal representatives of the patentee.

2. SAME—SUIT AND ASSIGNMENT BY ADMINISTRATOR.
   The executor or administrator of the patentee may not only sue on such causes of action, but may assign and transfer the same to another.

3. SAME—SUIT BY ASSIGNEE.
   The assignee may, in his own name, maintain an action thereon in any state the law whereof allows an assignee of a chose in action to sue thereon in his own name.

4. SAME—PAST INFRINGEMENT.
   An assignment by an administrator, purporting to transfer to the assignee "all the right, title, interest, claims, and demands whatsoever, which the estate has in, to, by, under, and through" specified letters patent, and extensions thereof, covers rights of action theretofore accrued for infringements.

5. SAME—LIMITATIONS.
    There is no federal statute of limitations in force respecting infringements committed since June 22, 1874.

6. SAME—STATE STATUTES.
    State statutes of limitations have no application to actions arising out of the infringement of patents.

7. SAME—LIABILITY OF COUNTIES.
    Counties are liable for infringements of patents. *Jacobs* v. *Hamilton Co.,* 1 Bond, 500, disapproved.

8. COURTS—INDIANA CIRCUITS—ADMINISTRATION—SALE.
    The civil circuit courts of Indiana are courts of general jurisdiction, and may authorize the sale of property of decedents' estates, whenever it is deemed for the interest of the parties concerned, or necessary to wind up the administration.

9. SAME—RATIFICATION OF SALE—EFFECT OF.
    The fact that the original order of court merely authorized a sale of the patent rights, does not invalidate the transfer therewith of accrued claims and demands of the estate arising thereunder, if such transfer and sale are duly approved, ratified, and confirmed by the court. The ratification and confirmation of the sale is equivalent to, and has the same legal effect and operation in transferring the claims and demands included therein, as if the court had previously directed their sale.

10. SAME—COLLATERAL ATTACK.
    The court having jurisdiction to authorize the sale, and having exercised such authority, the propriety or validity of the sale is not open to examination in a collateral proceeding, though the record fail to disclose a strict compliance with all the provisions of the statute in making such sale.

On Demurrers to Plaintiff's Petitions.

These are actions to recover of the defendants for alleged infringements of a patent, issued October 4, 1859, to Edwin May, for an improvement in the construction of prisons. The original term of the patent was fourteen years, which was subsequently extended for seven years, the extension expiring October 4, 1880. The patentee, a resident of Indianapolis, died testate February 27, 1880. Edwin Forrest May, appointed executor of his last will March 6, 1880, resigned June 7, 1880, when George F. McGinnis was appointed administrator *de bonis non,* with the will annexed. December 30, 1880, said administrator reported to the civil circuit court, of Marion county, Indiana, that all the real and personal estate of said decedent which had come to his hands or knowledge had been sold, except the rights of said decedent in certain letters patent; that a favorable opportunity offered for selling such rights; and that he believed it for the best interest of said estate to sell said rights at private sale. The court thereupon authorized and empowered said administrator so to sell said rights. March 7, 1882, said administrator reported that he had sold such rights to Sarah May, and had executed to her a deed of assignment of such rights, which he brought into court for approval, and thereupon the court ratified and confirmed said sale, and, upon examination, ratified, confirmed, and approved the assignment thereof. The assignment recited the procuring of the said letters patent, and also five other letters patent of subsequent dates, and the sale of all the right, title, interest, claim, and demand of said estate in, to, by, under, and through the same, and purported to "sell, assign, transfer, and set over unto the said Sarah May all the right, title, interest, claims, and

demands whatsoever which the said estate of said Edwin May, deceased, has in, to, by, under, and through the said improvements and the letters patent and extensions thereof therefor aforesaid; the same to be held and enjoyed by the said Sarah May for her own use and behoof, and for the use and behoof of her legal representatives, to the full end of the term for which said letters patent and extensions thereof are or may be granted, as fully and entirely as the same would have been held and enjoyed by said estate had this assignment and sale not been made, and as by and under the order and authority aforesaid I, as such administrator, can or ought to grant, sell, and assign the same."

*John C. Lee*, for Logan County.

*Perry M. Adams* and *Almon Hall*, for Seneca County.

*Brown & Geddes*, for plaintiff.

Before JACKSON and WELKER, JJ.

JACKSON, J. The plaintiff makes no claim against the defendant counties for the infringement or use of the patented apparatus previous to the fourth day of October, 1873, the date at which the extended term of the patent commenced. The petition, which in all essential particulars may be treated and regarded as a declaration in an action on the case, avers that the defendant counties, "on the fourth day of October, 1873, and up to and on the fourth day of October, 1880, and within and during the term of seven years mentioned in the certificate of extension of said letters patent, and after the granting of said letters patent and said extension, and before the bringing of this suit, and within the district and division aforesaid," did unlawfully, wrongfully, and injuriously, and without license, make, use, and cause to be made and used, the paid patented apparatus, in and about the construction and use and operation of certain jails or prison buildings, known and designated as the county jails of said counties, in infringement of the exclusive rights secured to Edwin May by the original letters patent, and the extension thereof. The petitioner then claims, as the assignee of the patentee's right and cause of action for said alleged infringement during the extended term of the patent, damages to the extent of $1,500 against each of the defendant counties. The cause of action which the plaintiff, as assignee, is thus seeking to enforce originated on the fourth day of October, 1873. The present suits were commenced on the twenty-fifth day of September, 1886, within the period of six years from the expiration of the extended term of the patent, but more than six years after the right of action accrued.

The defendants demurred to the petition, and for grounds of demurrer assigned the following: *First*, that the action is barred by the statute of limitations; *second*, that the boards of county commissioners nor the defendant counties in Ohio are not liable in an action for damages for the infringement of a patent; *third*, that the alleged cause of action did not survive the death of Edwin May, the patentee; *fourth*, that such cause of action was not assignable by the administrator of said patentee; *fifth*, that these actions are not maintainable by the plaintiff in her own name; and

*sixth,* that said cause of action was not assignable under the statutes of the state of Indiana; that the said circuit court of Marion county, Indiana, had no authority either to direct or to ratify and approve the assignment and transfer of said patent-rights and causes of action made by the administrator to the plaintiff; and that the assignment as made by the legal representative of the patentee did not include said alleged cause of action.

The third, fourth, fifth, and sixth grounds of demurrer, relating to plaintiff's title to the claim or cause of action sued on, and her right to maintain these suits in her own name, will be first briefly considered. It is hardly an open question at this day that a patentee's right of action for an infringement of his patent survives to his personal representatives; and it is well settled that his executor or administrator may not only sue on such cause of action, but may assign and transfer the same to another. A patent-right, with all the incidents arising from infringement thereof, is personal property, and goes, upon the death of the patentee, assignee, or grantee, to his executor or administrator. Section 4884, Rev. St., providing for the grant of a patent "to the patentee, his heirs and assigns," does not change the law, or prevent the personal representatives from succeeding to all such rights. *Shaw Relief Valve Co.* v. *New Bedford,* 19 Fed. Rep. 753; Walk. Pat. §§ 396, 397, and cases cited in notes. The objection that plaintiff cannot maintain these actions in her own name is not well taken. Under the Ohio Code of Procedure, an assignee of "a chose in action," being the real party in interest, may sue in his or her own name without joining the assignor. While the fifth section of the act of June 1, 1872, (Rev. St. § 914,) recognizes as permanent the distinction between the jurisdiction of law and of equity, it adopts or prescribes for the federal courts any state statute which authorizes suits to be brought in the name of the real party in interest. But, aside from this provision of the statute, it was settled by the supreme court as early as 1829, in the case of *Harper* v. *Butler,* 2 Pet. 239, that the assignee of "a chose in action," assigned by an executor in the state where he had proved the will and taken out letters testamentary, and where the testator lived and died, could maintain an action in another state, without joining the assignor and without a new probate, if the law of that state allowed an assignee of a "chose in action" to institute a suit thereon in his own name. See, also, *Weed S. M. Co.* v. *Wicks,* 3 Dill. 261, holding that an assignee of a "chose in action" can sue in his own name in the circuit court sitting in the state of Missouri, whose law, like that of Ohio, permitted suit in the name of the real party in interest. This rule is also recognized in *Wilkins* v. *Ellett,* 108 U. S. 257, 2 Sup. Ct. Rep. 641.

But it is insisted that, under the statutes of Indiana relating to the administration of decedents' estates, neither the administrator with the will annexed of Edwin May, nor the civil circuit court of Marion county, Indiana, had any authority to sell and transfer to the plaintiff the rights of action which she is seeking to enforce in these suits. Sections 2217, 2260, 2270, 2281, 2289, 2299, 2301, 2308, of the Revised Statutes of

Indiana are referred to in support of these propositions. These sections, which it is not deemed necessary to set out in detail, relate to the administration of estates, the duties of the personal representatives, the manner of disposing of the assets, and the jurisdiction of the civil circuit courts, as courts of probate, in making sales of the personal property of the estate and settlements with the executor or administrator. They confer upon said probate court full authority to sell the property of estates, whenever it is deemed for the interest of parties concerned, or necessary to wind up the administration. In the present case, the administrator with the will annexed, George F. McGinnis, reported to said court in December, 1880, that all the real and personal estate of the decedent which had come to his hands or knowledge had been administered, except the rights of said decedent in certain letters patent, etc., and that it was for the best interest of said estate, as he believed, to sell said rights at private sale. It appears from the record of said proceedings, which, by consent of parties, was submitted by defendants in support of this demurrer, that said circuit court of Marion county, Indiana, thereupon authorized and directed said administrator to sell said patent-rights, which he accordingly did to the plaintiff, and in March, 1882, reported his action in the premises to said court, together with the transfer or deed of assignment which he had executed to the plaintiff. This transfer, which went beyond a mere sale of the patent-rights, and included the claims and demands of the estate arising thereunder, in terms sufficiently broad to cover rights of action for infringements of said patents, such as plaintiff seeks to enforce herein, was regularly approved by the court, and said sale and transfer were by proper decree ratified and confirmed. Counsel for defendants do not controvert the point that said Marion circuit court of Indiana is a court of general jurisdiction in respect to the administration and settlement of decedents' estates, and that, under the statutes of Indiana, it had full jurisdiction over the *subject-matter* embraced in the proceeding under which plaintiff acquired her title; but they urge that the record in the case fails to disclose a full compliance with the conditions and requirements of the statutes in making the sale and transfer in question, and that, having only directed a sale of the patent-rights, the court improperly ratified and confirmed the administrator's sale, which went beyond that, and embraced "choses in action" in the nature of claims and demands for infringements of said patent-rights. The action of the court, in ratifying and confirming the sale as made and reported by the administrator, is equivalent to, and has the same legal effect and operation in, transferring to plaintiff the claims and demands included therein, as if the court had previously directed their sale. Then, as to the failure of the record to disclose a strict compliance with all the provisions of the statute in making said sale, this will not invalidate the proceeding, and render the sale void.

The *jurisdiction* of every court over the *subject-matter* it has determined or acted upon is of necessity examinable into by every tribunal which is called upon to enforce or give effect to such judgment. But when jurisdiction over the *subject-matter* exists, irregularities in the proceed-

ings, or the failure of the record to show literal compliance with all the requirements of the law in the mode and manner of conducting the same, will not, when collaterally attacked, avail to defeat rights acquired thereunder. This well-established rule was very clearly stated by the supreme court in *Voorhees* v. *Jackson*, 10 Pet. 449, as follows:

"When proceedings of a court of competent jurisdiction are brought before another court collaterally, they are by no means subject to all the exceptions which might be taken to them on direct appeal. The general and well-settled rule of law in such cases is that, when the proceedings are collaterally drawn in question, and it appears on the face of them that the *subject-matter* was within the jurisdiction of the court, they are voidable only. The errors and irregularities of any sort are to be corrected by some direct proceeding, either before the same court to set them aside, or in an appellate court. If there is a total want of jurisdiction, the proceedings are void and a mere nullity, and confer no right and afford no protection, and may be rejected when collaterally drawn in question. But the principle that every act of a court of competent jurisdiction shall be presumed to have been rightfully done till the contrary appear, applies as well to every judgment or decree rendered in the various stages of the proceeding of a court of general jurisdiction, from the institution to their completion, as to the final adjudication. Every matter adjudicated becomes a part of their record, which thenceforth proves itself, without referring to the evidence on which it has been adjudged. Hence the order of a court of general jurisdiction *confirming a sale* under attachment, upon inspection of the return, is conclusive in any collateral action on the question of the validity of the sale. *It may be conceded that the requirements of the statute in reference to the mode of proceeding are conditions precedent to a valid sale; but it is not essential that the record should set forth the various steps necessary to the performance of such conditions. A sale cannot be declared a nullity in a collateral action, because the record does not show affirmatively the evidence of a compliance with the terms prescribed by law in making such sale.*"

See, also, to same effect, *Moore* v. *Greene*, 19 How. 69; *Ransom* v. *Williams*, 2 Wall. 313; *Comstock* v. *Crawford*, 3 Wall. 396.

So, in *Cornett* v. *Williams*, 20 Wall. 226, it was held that, where a county court had jurisdiction to authorize a sale of a decedent's estate, and exercised such authority, the sale made thereunder must be presumed to have been regularly made, and its propriety or validity is not open to examination otherwise than in an appellate court, in a proceeding had directly for that purpose. Courts of probate are courts of record, and their official acts, when not void upon their face for want of jurisdiction, are entitled to full faith and credit in the federal courts. *Segee* v. *Thomas*, 3 Blatchf. 11. No want of jurisdiction appearing in the record of the Marion county circuit court, under which plaintiff acquired her rights of action in the present suits, this court must give to that proceeding the same faith and credit to which it would be entitled in the courts of Indiana. It follows that she has a valid title to the cause of action which the present suits are brought to enforce, and that, under the laws of Ohio and the authorities above cited, she may sue thereon in her own name. This disposes of the defenses raised by the third, fourth, fifth, and sixth grounds of demurrer.

We come next to the first and second causes of demurrer, which set

up the bar of the statute of limitations, and deny the liability of the board of county commissioners or counties in Ohio for damages for the infringement of a patent. In respect to the former defense, it is clear that no national statute of limitations presents any bar to the present suits. The alleged infringements commenced, as averred in the petition, on the fourth of October, 1873, and continued down to October 4, 1880, during the full period of the extension of the patent. The suits in question were begun on the twenty-fifth of September, 1886, within six years after the expiration of the extended term of the patent, and only seek to recover damages for the infringement during such extension. By the fifty-fifth section of the patent act of July 8, 1870, it was provided that "all actions [for infringements of patents] shall be brought during the term for which letters patent shall be granted or extended, or *within six years after the expiration thereof.*" This provision remained in force until the enactment of the Revised Statutes, June 22, 1874, when, by operation of section 5596, it was repealed as to all rights of action *thereafter to accrue;* but, by section 5599, it was left in full force as to all rights of action in existence at the date of said repeal. Under the operation of these two sections, there is no federal statute of limitations in respect to infringements committed since June 22, 1874; but in respect to causes of action arising, or acts of infringement done or committed, after July 8, 1870, and before June 22, 1874, said statute of limitations still applies, and suits to enforce causes of action accruing between said dates "may be commenced and prosecuted within the same time, as if said repeal had not been made." In other words, as to rights of action for infringements of patents committed prior to June 22, 1874, the national statute of limitations, prescribed by the fifty-fifth section of the act of July 8, 1870, still applies under the saving clause of section 5599, and suits to enforce the same may be commenced and prosecuted "during the term for which letters patent shall be granted or extended, or *within six years after the expiration thereof.*" This national statute of limitations is in force, and applies to plaintiff's cause of action which arose in October, 1873; and her suit to enforce the same, having been brought within six years after the expiration of said extended term of the patent, is not subject to the bar of that statute.

Counsel for defendants, however, rely chiefly upon the statute of limitations of the state of Ohio, which bar suits for torts in six years after cause of action accrued. But, as there is a federal statute of limitations in force and applicable to the present suits, or the causes of action they are brought to enforce, it is clear, under the authorities, that the state statute cannot be invoked to displace the federal statute, or shorten the period of limitations prescribed by the latter. If there was no national statute of limitations applicable to plaintiff's case, this court would still hold that the state statute of limitations would not constitute a bar to the suit. The supreme court of the United States has not directly, and in an authoritative way, passed upon this question, as to whether the state statute of limitations can be interposed as a bar to suits for the infringement of patents; but the point has been often presented in the United

States circuit courts, and, while the decisions of those courts are in conflict on the question, the decided weight of authority and reason is against the proposition that the state statute of limitations can be successfully interposed as a defense in such suits. It is not deemed necessary to review the cases on this subject, which is discussed in the valuable work of Walker on Patents, § 477, and some of the conflicting decisions cited in notes. Instead of *four* decisions (as stated by Walker) favoring the proposition that the state statute of limitations may be interposed as a defense in such actions, there are *five* cases to that effect, as follows: *Parker* v. *Hauk*, 2 Fish. Pat. Cas. 58, (decided in 1857 by Judge LEAVITT;) *Parker* v. *Hall*, 2 Fish. Pat. Cas. 62, note, (decided by Judges McLEAN and LEAVITT shortly after decision in *Parker* v. *Hauk;) Rich* v. *Ricketts,* 7 Blatchf. 230, (decided by Judge HALL in 1870;) *Sayles* v. *Oregon Cent. Ry. Co.*, 6 Sawy. 31, (decided by Judge DEADY in 1879;) and *Hayden* v. *Oriental Mills*, 15 Fed. Rep. 605, (decided in 1883 by Judge LOWELL.)

In support of the contrary proposition there may be cited ten decisions instead of *six*, as follows: *Collins* v. *Peebles*, 2 Fish. Pat. Cas. 541, (decided by Justice SWAYNE in 1865;) *Parker* v. *Halleck*, 2 Fish. Pat. Cas. 543, (by Justice GRIER in Pennsylvania;) *Read* v. *Miller*, 2 Biss. 12, (by Judge McDONALD in 1867;) *Wetherill* v. *New Jersey*, 1 Ban. & A. 105, (by Judge McKENNAN in 1874;) *Anthony* v. *Carroll*, 2 Ban. & A. 195, (by Judge SHEPLEY in 1875;) *Sayles* v. *Lake Shore & M. S. Ry. Co.*, 9 Fed. Rep. 515, (by Mr. Justice HARLAN in 1879;) *Sayles* v. *Dubuque & S. C. Ry. Co.*, 9 Fed. Rep. 516, (by Judges DILLON and LOVE in 1879;) *Hayward* v. *City of St. Louis*, 11 Fed. Rep. 427, (by Judge TREAT in 1882;) *Wood* v. *Cleveland Rolling-mill*, 4 Fish. Pat. Cas. 550, (by Judges SWAYNE and SHERMAN in 1871;) *May* v. *County of Fond du Lac*, 27 Fed. Rep. 691, (July 6, 1886, by Judge DYER.) In addition to these authorities, this court has on two occasions had this question before it, and, after full consideration of the subject, and a careful review of the decisions, reached the conclusion that state statutes of limitation have no application to actions arising out of infringement of a patent, even in the absence of a federal statute of limitations on the subject. Subsequent reflection and examination have only served to confirm this view of the question. The process and procedure acts of congress, as embodied in section 34 of the judiciary act of 1789, and in section 721, Rev. St., which seem to have controlled the opinions to the contrary, have their full operation when applied and confined to civil actions or suits at common law, in which there is concurrent jurisdiction in the state and federal courts. Letters patent, together with the rights of action and remedies given for the infringement of the same, are matters under the exclusive control of the federal legislature and federal judiciary.

In *Schreiber* v. *Sharpless*, 17 Fed. Rep. 589, Judges McKENNAN and BUTLER had occasion to consider section 721, Rev. St., in its application to an action for the penalty provided by section 4965, Rev. St., for infringement of a copyright, which in most respects stands upon the same

v.30F.no.4—17

footing as patent-rights, and they hold that said section " refers to cases where the federal courts obtain jurisdiction by reason of the *citizenship of parties*, and has no application to those cases in which the jurisdiction of the court arises out of the *cause of action*, and consequently involves rights over which the state legislature can exercise no authority, except in so far as the same may relate to the method of proceeding and practice." But, without going further into this subject, it is clear that, under section 5599, Rev. St., which reserves all existing causes of action, so far as limitations are concerned, precisely as though the act of July 8, 1870, had not been repealed, there is no bar of the statute as to the infringements committed by defendants between October 4, 1873, and June 22, 1874. The plea relied on covers this period, and is therefore too broad, and it should for that, if not for other, reasons be overruled.

The last ground of demurrer to be noticed, in the liability of boards of county commissioners or counties in Ohio to suits for the infringement of this May patent, presents a question of more difficulty than any yet considered. By the statutes of Ohio (section 845, c. 1, tit. 8) it is provided that "the board of [county] commissioners shall be capable of suing and being sued, pleading and being impleaded, in any court of judicature; * * * and in all suits, either in law or equity, brought by or against them in their official capacity, relating to any of the duties required by law to be performed by them, to employ counsel," etc. By section 859 it is made the duty of the county commissioners, among other things, to provide for the county a sufficient jail, "of such style, dimensions, and expense as the commissioners may determine." In the construction of the jails for the defendant counties, the commissioners caused the patented apparatus of Edwin May to be employed, and said counties have continued to use said apparatus therein. Under the authority conferred upon them by the law, it is perfectly clear that the county commissioners for Logan and Seneca counties could have *contracted* for the use of said patented apparatus, and that such *contract* would have been binding upon and enforceable against said counties. But, instead of *contracting* for its use, the commissioners wrongfully and without license appropriate this patented apparatus, and the counties now dispute their liability for such appropriation of the patentee's property, on the ground that they had no *authority* so to appropriate it, and because the remedy prescribed by congress for the redress of the injury done the patentee is an action on the case, which at common law implied or involved a tort, for which counties, as political subdivisions of the state or *quasi* corporations, could not be held responsible. To the credit of modern jurisprudence it may be said that neither private nor public corporations can now shield themselves from liability behind such a technicality, in cases where they have derived *a benefit* from their wrongful act, even when such act is "*ultra vires*," and no question of public policy is involved. As was said by the supreme court in *Marsh v. Fulton Co.*, 10 Wall. 676–684, and repeated in *Louisiana v. Wood*, 102 U. S. 294: "The obligation to do justice rests upon all persons, natural and artificial; and if a *county* obtains the money or property of others, without

authority, the law, independent of any statute, will compel restitution or compensation."

In the present suits, the " compensation" to which the patentee, or the plaintiff as the assignee of his right, is justly entitled, for the property appropriated and used by the defendant counties without authority, is sought to be recovered in the mode or form of action directed by the law, which conferred the right, and which had exclusive jurisdiction over the subject. It would be a strange anomaly in the law if a county, which had thus wrongfully appropriated a patentee's invention and property, could escape liability for damages thence resulting to the owner, by the simple device of calling the illegal act a *tort*, or by saying that the remedy by an action on the case, which congress had provided, was appropriate or applicable only to *torts*. If the state of Ohio had itself appropriated this patent, the owner would have had a valid claim for damages for the infringement, which he could not, however, have enforced against the state, without its consent to be sued. Without such consent, his difficulty would be, not as to the *right*, but only as to the *remedy*. No such difficulty is presented in respect to counties in Ohio, even treating them as mere political subdivisions of the state, for, by the statute already cited, they are "capable of suing and being sued, pleading and being impleaded, in any court of judicature."

But it is urged on behalf of defendants, under the authority of *Board Com'rs Hamilton Co.* v. *Mighels*, 7 Ohio St. 110, that the board of commissioners of the county are not liable in this *quasi* corporate capacity to an action for damages for injury resulting to a private party by their wrongful act. In that case the injury complained of resulted from the *negligence* of the commissioners in leaving a stairway at the court-house in an unfinished and impracticable condition, by reason of which plaintiff had fallen and sustained serious injury. It is well settled by the authorities that political subdivisions of the state, such as counties and townships, are not responsible for acts of omission by their officials, as for their negligence in constructing public buildings, or in erecting, maintaining, and repairing highways, bridges, etc. The 7 Ohio St. case belongs to this class of authorities, which exempts counties from liability for *mere personal injuries* arising from negligent acts of omission or commission on the part of their agents. It has no application whatever to cases like the present, in which the *property* of another has been either willfully or negligently appropriated by such agents to the *use* and *benefit* of the county. In such cases the benefit secured cannot be retained and enjoyed by setting up the wrongful act in obtaining it. To allow this would violate the plainest dictates of justice and common honesty.

In *Jacobs* v. *Hamilton Co.*, 1 Bond, 500, it was, however, held that a county in Ohio was not liable for the infringement of a patent-right. This decision was avowedly based upon the case of *Hamilton Co.* v. *Mighels*, 7 Ohio St. 110, and fails to recognize the distinction, now well settled, between the liability of a county for the negligence of its officers, causing mere *injury* to another without advantage to itself, and their wrongful acts which result in benefit to the county, as well as damage and

loss to the injured party. It was further assumed, in *Jacobs* v. *Hamilton Co.*, that some state legislative sanction was necessary in order to maintain suits sounding in tort against counties, and that the action on the case for the infringement thus complained of, being of the same technical form, could not be maintained, etc. The state could not, by either direct or indirect legislation, exempt its counties from liability for the infringement of patents, nor has it attempted to do so. The patentee's rights and remedies are created and defined by congress, which has, under the constitution, the exclusive control of the subject. The right is given and remedy created by federal statute, which does not except *counties* from the obligation to respect the exclusive grant to the patentee of making, selling, and using his invention. Judicial refinements and distinctions upon the character of the remedy prescribed by congress for violations of the patentee's rights, conferred by statute of the general government, should not be resorted to, either to defeat the right or impair the remedy. If congress had not directed that an action on the case should be the remedy for the recovery of damages for the infringement of a patent, the patentee could, in cases like the present, waive what is called the tortious act, and bring *assumpsit* upon the implied contract against the county to recover the value of his property appropriated. It is refining too much to allow the nature of the action to defeat the actual and substantial rights. It is equally unsound to say that the plaintiff's rights in such cases are dependent upon the state permission to make counties liable for torts. No special enactment of the state of Ohio is needed to make her counties liable for the infringement of a patent. The legislature of New York, by special act, sought to make the city officials of Brooklyn liable in such cases, and to exempt the city itself from responsibility; but, in the case of *Bliss* v. *City of Brooklyn*, 8 Blatchf. 533, the learned judge held the city liable to Bliss, the patentee, for the appropriation of his patent by the city, notwithstanding the statute which attempted to exempt the corporation from liability. The case of *Jacobs* v. *Hamilton Co.*, 1 Bond, 500, which lays down a different rule, has never been recognized or followed, and cannot be sustained upon any sound principle.

In the subsequent case of *May* v. *Commissioners Johnson Co.*, MS., which was tried before Mr. Justice DAVIS on the circuit, the county was held liable for the infringement of this patent; Judge DAVIS saying that "a patentee was secured by congress in his patented rights against the encroachment of any person or society." In *May* v. *County of Fond du Lac*, 27 Fed. Rep. 695, Judge DYER decided the point in the same way. In *May* v. *County of Mercer*, *ante*, 246, Judge BARR reached the same conclusion. The weight of authority and reason is clearly in favor of holding counties liable for the unauthorized appropriation and use of patented articles or apparatus.

One of the latest and most instructive cases upon the general subject of the liability of corporations for the wrongful acts of their agents, resulting in benefit to the corporation, is that of *Salt Lake City* v. *Hollister*, 118 U. S. 259–263, 6 Sup. Ct. Rep. 1055. The principles so clearly and forcibly announced in that case are directly applicable to the present

suits, and the question raised by the cause of demurrer under consideration. Cooley, Torts, 119, 122, and 2 Hill, Torts, c. 48, p. 414, also sustain the general position herein presented.

Our conclusion is that the defendant counties are liable for the infringement of the patent in question, and that the plaintiff's remedy against them is complete and enforceable. It follows that this, as well as all the grounds of defendants' demurrer must be overruled. It is accordingly so adjudged.

WELKER, J., concurs.