## HEAD v. PORTER.

(Circuit Court, D. Massachusetts. October 1, 1895.)

No. 16.

1. PATENT INFRINGEMENT SUITS—EQUITY JURISDICTION—ACCOUNTING OF PROFITS—SURVIVAL OF ACTIONS.

The decision in Root v. Railway Co., 105 U. S. 189, that equitable jurisdiction in a bill for a naked account against the infringer of a patent cannot be sustained upon the theory that the wrongdoer is a trustee of his gains and profits for the use of the owner of the patent, does not involve the conclusion that such suits are to be regarded as mere actions of tort for the recovery of damages, in which the right of action cannot survive the infringer's death.

2. SAME.

The single question decided in that case was that a bill for a naked account of profits and damages against an infringer cannot be sustained; that such relief ordinarily is incidental to some other equity, the right to enforce which secures to the patentee his standing in court; and that the most general ground for equitable interposition is to insure to the patentee his rights by means of an injunction against a continuance of the infringement.

3. SAME—MEASURE OF DAMAGES—GAINS AND PROFITS.

Notwithstanding the provision of the act of July 8, 1870 (16 Stat. 201), giving to the complainant in an equity suit for infringement of a patent the right to recover damages in addition to profits, gains and profits are still the proper measure of damages, except where the injury sustained by the infringement is plainly greater than the aggregate of what was made by the infringer. Birdsall v. Coolidge, 93 U. S. 64, and Root v. Railway Co., 105 U. S. 189, followed.

4. SAME.

The profits actually made by an infringer, for which recovery is sought by a bill in equity, are not the same as damages in an action of libel, slander, diversion of a water course, and similar actions of tort. The former are the actual, direct, pecuniary benefits, capable of definite measurement, acquired by the wrongdoer; the latter are primarily the loss suffered by the injured party where the wrongdoer realizes no pecuniary benefits, or only such as are indirect, indefinite, or rest in speculation, compromise, or arbitrary adjustment.

5. SAME—ABATEMENT AND REVIVAL—DEATH OF DEFENDANT.

Upon the foregoing principles, *held*, that a bill in equity for infringement of a patent which prays for an injunction and an account of profits is not founded upon a tort in such sense that the death of the defendant will abate the same, so that it cannot be revived.

This was a suit by Charles Head against Samuel W. Porter for alleged infringement of a patent. On motion to dismiss the bill on the ground that the suit has been abated by the death of the defendant.

William A. Hayes, for complainant.

Sherman Hoar and Alex. P. Browne, for defendant.

COLT, Circuit Judge.   This is a motion to dismiss a bill in equity upon the ground that by reason of the death of the defendant the suit has abated, and cannot be revived.   The bill is brought for the infringement of a patent, and contains the usual prayer for an injunction and an account of profits.   The usual mode of procedure where the defendant dies pending suit is for the complainant to bring a bill of revivor, and for the defendant to raise the question of the survival of the action by demurrer to the bill; but, since the question has been fully argued on the present motion, I will proceed to consider it.

The proposition relied upon in support of the motion is that a suit for the infringement of a patent, being essentially an action of tort for damages, does not survive at common law or by statute; that this applies to bills in equity as well as actions at law, because "whether an action survives depends on the substance of the cause of action, not on the forms of proceeding to enforce it."   Schreiber v. Sharpless, 110 U. S. 76, 80, 3 Sup. Ct. 423.   There have been five cases in the circuit courts in which this question has been passed upon.   In four of these it was held that a bill in equity for the infringement of a patent is not finally determined by the death of the defendant, and that the abatement may be arrested by bill of revivor.   Smith v. Baker (decided by Judge McKennan in 1874), 1 Ban. & A. 117, Fed. Cas. No. 13,010; Atterbury v. Gill (decided by Judge Welker in 1877), 3 Ban. & A. 174, Fed. Cas. No. 638; Kirk v. Du Bois (decided by judges McKennan and Acheson in 1886), 28 Fed. 460; Hohorst v. Howard (decided by Judge Lacombe in 1888), 37 Fed. 97.   The remaining case —Draper v. Hudson (decided in 1873), Holmes, 208, Fed. Cas. No. 4,069—can hardly be considered an authority in conflict with these cases, in view of the ground on which that decision rests, and the subsequent case of Atwood v. Portland Co., 10 Fed. 283, in which, speaking of Judge Shepley's decision in Draper v. Hudson, Judge Lowell (page 284, Holmes, Fed. Cas. No. 4,069) says, "As an authority in this court, his decision is not binding."   Draper v. Hudson was not put upon the ground that the action did not survive at common law, but that it became abated because the principal relief failed.   The court says:   "When the title to the principal relief, which is the proper subject of a suit in equity,—the injunction and discovery,—fails, the incident right to an account fails also."   This is not the law.   It is now settled that where a bill in equity is brought upon a patent, and during the pendency of the suit the right to an injunction fails by reason of the expiration of the patent, the suit is not determined, but the court will proceed to administer the other relief sought.   Beedle v. Bennett, 122 U. S. 71, 7 Sup. Ct. 1090; Clark v. Wooster, 119 U. S. 322, 7 Sup. Ct. 217; Consolidated Safety-Valve Co. v. Crosby Steam Gauge & Valve Co., 113 U. S. 157, 5 Sup. Ct. 513.   In case of the death of the plaintiff, a bill in equity for the infringement of a patent does not abate, but may be prosecuted to final judgment by his representatives.   Railroad Co. v. Turrill, 110 U. S. 301, 303, 4 Sup. Ct. 5; May v. Logan Co., 30 Fed. 250.   If this motion is to be determined on the authority of adjudged cases, it should be denied.   But it is strenuously contended that, assuming this cause of action might have survived previous to Root v. Railway Co. (1881) 105 U. S. 189,

the decision in that case so modified or changed the law that it does not now survive. Upon this assumption, Kirk v. Du Bois and Hohorst v. Howard, supra, were wrongly decided, since they arose after the decision in Root v. Railway Co. The reasoning of counsel is as follows: In the decisions previous to Root v. Railway Co., the right of recovery in a bill in equity for the infringement of a patent was based upon the theory of a fiduciary relation between the patentee and wrongdoer, whereby the infringer became a trustee of the profits for the use of the owner of the patent, and liable to account as such; that this doctrine was overthrown in Root v. Railway Co.; and that it follows that an action for infringement, whether at law or in equity, is a simple tort for the recovery of damages, which does not survive. It is necessary, therefore, to find out the scope of the decision in Root v. Railway Co., and its bearing on the present motion. The single question determined in that case, in the language of Mr. Justice Matthews, speaking for the court (page 215), was as follows:

"Our conclusion is that a bill in equity for a naked account of profits and damages against an infringer of a patent cannot be sustained; that such relief ordinarily is incidental to some other equity, the right to enforce which secures to the patentee his standing in court; that the most general ground for equitable interposition is to insure to the patentee the enjoyment of his specific right by injunction against a continuance of the infringement."

In the consideration of that question the court reviews the foundation on which the jurisdiction of courts of equity rests in patent cases, and the doctrine that an infringer is a trustee of the profits made by his wrongful acts, as in the case "of trustees who have committed breaches of trust by an unlawful use of the trust property for their own advantage," was held to be unsound; that "it is the character of the property, and not the wrong done in converting or withholding it, that constitutes the wrongdoer a trustee." In respect to prior cases, such as Packet Co. v. Sickles, 19 Wall. 611, and Burdell v. Dewing, 92 U. S. 716, which assumed the doctrine of trusteeship, the court, in Root v. Railway Co. (page 214), said:

"But the inference sought to be drawn from the expressions referred to is not warranted. It is true that it is declared in those cases that in suits in equity for relief against infringements of patents the patentee, succeeding in establishing his right, is entitled to an account of the profits realized by the infringer, and that the rule for ascertaining the amount of such profits is that of treating the infringer as though he were a trustee for the patentee in respect to profits. But it is nowhere said that the patentee's right to an account is based upon the idea that there is a fiduciary relation created between him and the wrongdoer by the fact of infringement, thus conferring jurisdiction upon a court of equity to administer the trust and to compel the trustee to account. That would be a reductio ad absurdum, and, if accepted, would extend the jurisdiction of equity to every case of tort where the wrongdoer had realized a pecuniary profit from his wrong. All that was meant in the opinions referred to was to declare according to what rule of computation and measurement the compensation of a complainant would be ascertained in a court of equity, which, having acquired jurisdiction upon some equitable grounds to grant relief, would retain the cause for the sake of administering an entire remedy and complete justice, rather than send him to a court of law for redress in a second action. The rule adopted was that which the court in fact applies in cases of trustees who have committed breaches of trust by an unlawful use of the trust property for their own advantage; that

is, to require them to refund the amount of profit which they have actually realized. This rule was adopted, not for the purpose of acquiring jurisdiction, but, in cases where, having jurisdiction to grant equitable relief, the court was not permitted by the principles and practice in equity to award damages in the sense in which the law gives them, but a substitute for damages, at the election of the complainant, for the purpose of preventing multiplicity of suits. And the particular rule was formulated, as will be seen by reference to the cases already referred to, out of tenderness to defendants in order to mitigate the severity of the punishment to which they might be subjected in an action at law for damages. * * * But it is a rule of administration, and not of jurisdiction; and, although the creature of equity, it is recognized as well at law as one of the measures, though not the limit, for the recovery of damages."

In defining the jurisdiction and characteristics of courts of equity, the court (page 207) said:

"It is the fundamental characteristic and limit of the jurisdiction in equity that it cannot give relief when there is a plain and adequate and complete remedy at law; and hence it had no original, independent, and inherent power to afford redress for breaches of contract or torts, by awarding damages; for to do that was the very office of proceedings at law. When, however, relief was sought which equity alone could give,—as by way of injunction to prevent a continuance of the wrong, in order to avoid multiplicity of suits, and to do complete justice,—the court assumed jurisdiction to award compensation for the past injury; not, however, by assessing damages, which was the peculiar office of a jury, but requiring an account of profits, on the ground that, if any had been made, it was equitable to require the wrongdoer to refund them, as it would be inequitable that he should make a profit out of his own wrong. As was said by Vice Chancellor Wigram in Colburn v. Simms, 2 Hare, 543, 'The court does not, by an account, accurately measure the damage sustained by the proprietor of an expensive work from the invasion of his copyright by the publication of a cheaper book,' but, 'as the nearest approximation which it can make to justice, takes from the wrongdoer all the profits he has made by his piracy, and gives them to the party who has been wronged.' "

Root v. Railway Co. does not touch the question whether a bill in equity for relief against infringements of a patent abates by reason of the death of the defendant, but it simply decides that equitable jurisdiction in a bill for a naked account against an infringer cannot be sustained upon the doctrine that the wrongdoer is a trustee of his gains for the use of the owner of the patent, and that some recognized ground of equitable relief must appear in the bill.

The present bill prays for an injunction as well as an account of profits, and is, therefore, a case within the jurisdiction of a court of equity. It not only asks for an injunction against future infringements, but it calls upon the wrongdoer to refund the profits he has made, "as it would be inequitable that he should make a profit out of his own wrong." Profits are the gains or savings made by the wrongdoer by the invasion of the complainant's property right in his patent. They are the direct pecuniary benefits received, and are capable of a definite measurement. Calling them the "measure of damages in equity" does not mean that they are the same as damages in an action at law. They are clearly not the same. "Profits in equity are the gain, or saving, or both, which the defendant has made by employing the infringing invention. This gain or saving is a fact. It is an actual pecuniary benefit which has resulted directly from the defendant's wrongful use of the plaintiff's property, which he has had and enjoyed, and to which, on equitable theories,

the plaintiff is entitled." 3 Rob. Pat. § 1062, note 7, par. 3. At law damages may include profits, but they also include other elements necessary to make up the actual loss, and to give full compensation to the injured party. They may be still further increased by way of punishment for the wrong. But equity, unless by statute, exacts nothing by way of loss or punishment from the wrongdoer except his actual gains. In Elizabeth v. Pavement Co., 97 U. S. 126, Mr. Justice Bradley, speaking for the court (page 138), said:

"But one thing may be affirmed with reasonable confidence,—that, if an infringer of a patent has realized no profit from the use of the invention, he cannot be called upon to respond for profits. The patentee, in such case, is left to his remedy for damages. It is also clear that a patentee is entitled to recover the profits that have been actually realized from the use of his invention. * * * It may be added that, where no profits are shown to have accrued, a court of equity cannot give a decree for profits, by way of damages, or as a punishment for the infringement. Livingston v. Woodworth, 15 How. 559. But when the entire profit of a business or undertaking results from the use of the invention, the patentee will be entitled to recover the entire profits, if he elects that remedy."

Referring to that case in Root v. Railway Co., the court (page 203) said:

"Accordingly, in that case, the bill was dismissed as to the city of Elizabeth, which had infringed, because it appeared that it had made no profit from the use of the patented improvement, while a decree was rendered against the contractor who had laid the pavement which was the subject of the patent, because he was shown to have made profits from the infringement. The municipal corporation, of course, remained liable to respond in damages in an action at law for any loss which the plaintiff could have established by proof."

By the act of July 8, 1870, c. 230 (16 Stat. 206), the complainant in a bill in equity brought for the infringement of a patent is entitled to recover, in addition to the profits, the damages he has sustained. In referring to this statute in Birdsall v. Coolidge, 93 U. S. 64, the court (page 69) said:

"Gains and profits are still the proper measure of damages in equity suits, except in cases where the injury sustained by the infringement is plainly greater than the aggregate of what was made by the respondent; in which event the provision is that the complainant 'shall be entitled to recover, in addition to the profits to be accounted for by the respondent, the damages he has sustained thereby.'"

In referring to that case in Root v. Railway Co. it is (page 201) declared:

"The whole force of the change in the statute consists in conferring upon courts of equity, in the exercise of their jurisdiction in administering the relief which they are accustomed and authorized to give, and which is appropriate to their forms of procedure, the power not merely to give that measure of compensation for the past, which consists in the profits of the infringer, but to supplement it, when necessary, with the full amount of damage suffered by the complainant, and which, if he had sued for that alone, he would have recovered in another form."

The general rule that personal actions die with the person does not apply where property is acquired which benefits the testator. In the language of the supreme court in U. S. v. Daniel, 6 How. 11, 13:

"Where, by means of the offense, property is acquired which benefits the testator, there an action for the value of the property shall survive against the executor."

In the case of Bishop of Winchester v. Knight, 1 P. Wms. 406, where the bill prayed for an account of ore dug by the ancestor of the defendant, and the argument was that, this being a personal tort, it died with the person, Lord Chancellor Hardwicke (page 407) said:

"It would be a reproach to equity to say, where a man has taken my property, as my ore or timber, and disposed of it in his lifetime, and dies, that in this case I must be without remedy. It is true, as to the trespass of breaking up meadow, or ancient pasture ground, it dies with the person; but as to the property of the ore or timber it would be clear, even at law, if it came to the executor's hands, that trover would lie for it; and, if it has been disposed of in the testator's lifetime, the executor, if assets are left, ought to answer for it."

In Lansdowne v. Lansdowne, 1 Madd. 116, which was a bill for an account of profits for equitable waste, the vice chancellor (page 139) said:

"This I take to be a just exposition of the qualifications under which the maxim, 'Actio personalis moritur cum persona,' is received at law; and, if equity is to decide in analogy to a court of law, the question in the present case will be whether, by the equitable waste committed by the late marquis, he derived any benefit; or whether it was a naked injury, by which his estate was not benefited. * * * And as at law, if legal waste has been committed, and the party dies, an action for money had and received lies against his representative, so, upon the same principle, in cases of equitable waste, the party must, through his representatives, refund in respect to the wrong he has done."

In the case of Phillips v. Homfray, 24 Ch. Div. 439, Justice Baggallay (page 476) said:

"The general result of these cases, and of others to the like effect, may thus be stated: that a court of equity will give effect to a demand against the estate of a deceased person in respect of a wrongful act done by him, if the wrongful act has resulted in a benefit capable of being measured pecuniarily, and if the demand is of such a nature as can be properly entertained by the court. The principles thus acted upon by courts of equity are in accordance with the conclusions enunciated by Lord Mansfield with reference to actions at common law which survive or die on account of the cause of action; but, as regards those actions which at common law survive or die on account of the form of action, courts of equity will not permit the justice of the case to be defeated by reason of the technicalities of particular procedure."

In Sayles v. Railroad Co., 4 Ban. & A. 239, Fed. Cas. No. 12,424, which was a suit for the infringement of a patent, Judge Hughes (page 245, 4 Ban. & A., Fed. Cas. No. 12,424) said:

"Let us now suppose the case of a person who takes possession of and uses another's horse, wagon, and team, or threshing machine, without his knowledge, consent, or authority. In such a case * * * the owner may recover damages in trespass for the tort, or he may waive the tort, and sue in assumpsit on the implied promise to pay what is equitably due for the use and possession of the property. * * * The case I have supposed is, in principle, precisely the case we have at bar; for there is no magical quality in the property of the patentee in his patent to distinguish this case from the one just supposed. * * * The act of the defendant was nothing but the simple one of a person taking and using another's property without authority, to his own advantage, and incurring a liability to compensate the owner for such use of the property. The case is, in principle, precisely identical with that of such use of a horse, or a boat, or a wagon and team, or threshing machine, giving a right of action in assumpsit."

In Stone-Cutter Co. v. Sheldons, 15 Fed. 608, which was a patent suit, Judge Wheeler (page 609) observed:

"When the Windsor Manufacturing Company sold machines embodying these inventions to the defendants for use, it invaded the orator's rights, and converted the orator's property to its own use. These acts were tortious, and an action would lie for these wrongs. As that company received money for the orator's property, the orator could waive the tort, and sue in assumpsit for the money, or, what is the same in effect, proceed for an account of the money received."

In Jones v. Van Zandt, 4 McLean, 599, Fed. Cas. No. 7,503, the court (page 600, 4 McLean, Fed. Cas. No. 7,503) said:

"But, except by statute, actions of torts, replevin, etc., do not survive against the executors or administrators, unless the estate of the deceased received some gain from the wrong, when some form of action will lie."

May v. Logan Co., 30 Fed. 250, was an action at law against the county of Logan for the infringement of a patent, which came before Judges Jackson and Welker. Judge Jackson, in the opinion of the court (page 259), said:

"It would be a strange anomaly in the law if a county, which had thus wrongfully appropriated a patentee's invention and property, could escape liability for damages thence resulting to the owner by the simple device of calling the illegal act a tort, or by saying that the remedy by an action on the case, which congress had provided, was appropriate or applicable only to torts. * * * The patentee's rights and remedies are created and defined by congress, which has, under the constitution, the exclusive control of the subject. The right is given and remedy created by federal statute, which does not except counties from the obligation to respect the exclusive grant to the patentee of making, selling, and using his invention. Judicial refinements and distinctions upon the character of the remedy prescribed by congress for violations of the patentee's rights, conferred by statute of the general government, should not be resorted to either to defeat the right or impair the remedy. If congress had not directed that an action on the case should be the remedy for the recovery of damages for the infringement of a patent, the patentee could, in cases like the present, waive what is called the tortious act, and bring assumpsit upon the implied contract against the county to recover the value of his property appropriated. It is refining too much to allow the nature of the action to defeat the actual and substantial rights."

An invention involves the conception of means, which, when embodied in a concrete form, may become the subject of a patent. "It is a mental result, * * * and the machine, process, or product is but its material reflex and embodiment.", Smith v. Nichols, 21 Wall. 112, 118. A patent is an incorporeal property right in an invention, created by statute. Property rights, whether corporeal or incorporeal, are governed by the same principles, and should receive equal protection. When a person wrongfully appropriates a patented invention, it is an invasion of the patentee's right of property, and the gains or profits derived from such piracy belong to the patentee. Because the machine in which the wrongdoer may have embodied his piracy may not belong to the patentee does not affect the real character of the act. I can see no difference in principle between a suit by the owner of a patent against an infringer to recover the profits he has made and a suit by the owner of land or of a mine against a wrongdoer to recover the value of timber or ore taken. I cannot assent to the proposition that the profits actually made by an infringer, for

which recovery is sought by a bill in equity, are the same as damages in an action of libel, slander, diversion of a water course, trespass in breaking up meadow or pasture land, and similar actions of tort. The former are the actual, direct, pecuniary benefits, capable of definite measurement, acquired by the wrongdoer; the latter are primarily the loss suffered by the injured party where the wrongdoer realizes no pecuniary benefits, or only such as are indirect, indefinite, or rest in speculation, compromise, or arbitrary adjustment. For these reasons I am of opinion that this cause of action survives, and that the motion to dismiss should be denied.

Motion denied.